1/4/2022
1/5/2022

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   In re the Application of:        )    Case No.  **2:22-cv-00006 TL**
                                     )
10                                   )
    YESENIA RIVERA GABRIEL           )    VERIFIED PETITION FOR RETURN OF
11              Petitioner,          )    CHILDREN UNDER THE CONVENTION ON
    vs.                              )    THE CIVIL ASPECTS OF INTERNATIONAL
12                                   )    CHILD ABDUCTION
    ANTHONY JAMES LAVISON,           )
13              Respondent.          )
                                     )
14

15                              I. INTRODUCTION

16      1.1      This action is brought by Ms. Yesenia Rivera Gabriel, a citizen of Mexico, to

17   secure the return of her son, J.E.L.R., age 3.

18      1.2      The child was wrongfully removed from Mexico and brought to Snohomish

19   County, State of Washington in the United States of America by the child's father, Mr. Anthony

     James Lavison, Respondent.
20
        1.3      This petition is brought pursuant to the Convention on the Civil Aspects of
21
     International Child Abduction (the "Hague Convention" or the "Convention", done at the Hague
22
     on October 25, 1980 ("the Convention"), and the International Child Abduction Remedies Act
23
     ("ICARA"), 42 U. S. C. 9001 et seq.  The Hague Convention came into effect in the United States
24
     on July 1, 1988. The Hague Convention came into effect as between the United States and
25
     Mexico on October 1, 1991

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL        **Law Office of F.Andrekita Silva**
CHILD ABDUCTION                                         **1325 Fourth Avenue, Suite 2000**
Page 1 of 17                                            **Seattle, Washington  98101**
                                                        **206-224-8288**

1/4/2022

1

2     1.4     The Hague Convention is a treaty between sovereign states, and therefore

3 entitled to the same weight and deference as the Constitution of the United States.

4     1.5     The objects of the Hague Convention are:

5     Article 1 (a):   To secure the prompt return of children wrongfully removed from
     or retained in any Contracting State; and
6     Article 1 (b):   To ensure that rights of custody and of access under the law of
     one Contracting State are effectively respected in the other
7     Contracting States.

8     1.6     The Hague Convention authorizes a federal court to determine the merits of a

9 claim for wrongful removal or retention of a child. It does not, however, permit the federal court to

10 consider the merits of any underlying custody dispute.

11

12 <div align="center">II. JURISDICTION</div>

13     2.1     The United States District Court for the Western District of Washington has

14 jurisdiction pursuant to 42 U. S.C. 9003(a) and (b) (jurisdiction of courts under the Hague

15 Convention). Venue is proper because, upon information and belief, the child and the

16 Respondent are residing at the residence of the Respondent in the City of Monroe, Snohomish

17 County.

18

19 <div align="center">III. STATUS OF PETITIONER AND CHILDREN</div>

20     3. 1.     As noted above, Petitioner Yesenia Rivera Gabriel (hereafter referred to as

21 Petitioner or Petitioner Rivera) and Respondent Anthony James Lavison (hereafter referred to a

22 Respondent or Respondent Lavison) are the parents of the child, J.E.L.R.

23     3. 2.     A birth certificate for J.E.L.R. was issued in both Yuma, Arizona and in San Luis

24 Rio Colorado, Sonora identifying Petitioner and Respondent as the parents of J.E.L.R.

25

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 2 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington 98101
206-224-8288

1/4/2022

3. 3.       It is uncertain if Petitioner and Respondent executed an Acknowledgment of Parentage.

3. 4.    Petitioner and Respondent, who is American citizen and resident of the State of Washington, have never been married. They began cohabiting in Sonora, Mexico in September of 2017.

3. 5.    Petitioner and Respondent met online on May 27, 2017.  During their online courtship, Respondent had expressed a general interest in relocating to Mexico in order to start a new life.  He purportedly had a close friend living in Aguascalientes, Mexico who had offered him employment.

3. 6.    Petitioner and Respondent had a whirlwind, online romance and in late July of 2017, Respondent, traveled to San Luis Rio Colorado, Sonora, Mexico (hereafter referred to as San Luis) to meet Petitioner in person.  During this trip, Petitioner and Respondent discussed marriage and children.

3. 7.    After 9 days together in San Luis in July, the couple mutually agreed that Respondent would relocate to San Luis, so that he and Petitioner could live together and establish a family. Respondent Lavison returned to Washington and put his affairs in order.

3. 8.    In early September 2017, Respondent returned to San Luis.  As planned, Petitioner and Respondent got an apartment together at Avenida Hidalgo 19 y 20, Colonia Residencias, San Luis Rio Colorado, and began living together.

3. 9.    Petitioner Rivera worked full time as a Materials Assistant for ENVIROQUIP, SA de CV. This is a manufacturing company where Petitioner began working in June of 2014, and where she continues to work.

3. 10.    Petitioner understood that Respondent Lavison had worked as an auto mechanic for Hyundai in Kirkland, Washington prior to relocating. Once he relocated to Mexico, he had no work Visa and he did not pursue employment in Mexico.

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

3. 11.   Petitioner Rivera became pregnant in October of 2017.  In December of 2017, when Petitioner was two months pregnant, there was a serious incident of physical violence by Respondent Lavison against Petitioner. In a fit of rage, Respondent verbally abused Petitioner Rivera and choked her, leaving marks on her. He then threatened her by saying he will kill her with a knife and afterwards he would kill himself too.

3. 12.   Petitioner was alarmed. Although she was fearful for her safety, Respondent Lavison, sobbed and begged her not to leave him alone in their apartment.  Petitioner was in love, confused, and concerned for Respondent Lavison's safety as well. Prior to this incident, she had hidden the knives. She wished to spare him embarrassment and criminal consequences, so she remained with Respondent.

3. 13.   Given Respondent's unemployment situation, and Petitioner's need for emotional support after the trauma of physical violence, the couple gave up their apartment and began living with Petitioner's parents at Avenida Mexico, 23 y 24, Colonia Federal, San Luis Rio Colorado.

3. 14.   The couple's relationship continued to be troubled.  Respondent Lavison was jealous and possessive. He continued to have episodes of anxiety and depression.

3. 15.   A second incident of violence occurred on June 2, 2018 when Petitioner Rivera was eight months pregnant. It was the day of her baby shower. This time, Respondent Lavison grabbed her by the arm, threw her on the bed and while pinning her down with his body, he used his hands to pin her neck and arms in place while verbally abusing her. Although he eventually released her, he left marks on her neck and arms.

3. 16.   Although the couple's plan was to continue living in Mexico, Respondent Lavison wanted J.E.L.R. to be born in the United States. He persuaded Petitioner Respondent that she should use her savings to pay for a birth at Yuma Regional Medical Center in Arizona.  The

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 4 of 17

**Law Office of F.Andrekita Silva**
**1325 Fourth Avenue, Suite 2000**
**Seattle, Washington  98101**
**206-224-8282**

1/4/2022

1   hospitalization and medical services for the birth cost approximately $4,000.00. Of that,

2   Respondent Lavison contributed approximately $300.00 as he had no savings.

3       3. 17.   The original plan had been for the maternal grandmother, Maria Guadalupe Gabriel,

4   to provide childcare upon the birth of their child. After relocating to Mexico in September of 2017,

5   Respondent had two very brief periods of employment with Toyota in Yuma, Arizona. He worked

6   briefly in the Fall of 2017.

7       3. 18.   Although Respondent Lavison returned to his employment with Toyota in the Spring

8   of 2018, he found the commute from San Luis to Yuma burdensome. He again quit his job just

9   after J.E.L.R.'s birth. He showed little interest in working outside the home after that. Altogether,

10  Respondent's employment totaled approximately four months or less.

11      3. 19.   Petitioner Rivera and Respondent Lavison crossed the border and visited Yuma for

12  approximately 4 days in early July 2018.

13      3. 20.   J.E.L.R. was born. On July 9, 2018, the couple returned to Mexico from Yuma.  At

14  that time, they left the home of the maternal grandparents on Avenida Mexico. They moved into

15  their own home at Avenida Puebla 37 y 38 in San Luis Rio Colorado.

16      3. 21.   Petitioner Rivera received 84 days of maternity leave from her employer. Since the

17  couple had no other means of financial support, Petitioner was forced to return to work.

18  Respondent Lavison took over the childcare responsibilities while Petitioner was at work. During

19  months when Respondent was absent from Mexico and in Washington, the maternal

20  grandmother, Guadalupe, provided child care. The couple relied on Petitioner's salary for the

21  bulk of their financial needs.

22      3. 22.   In December of 2018, the couple traveled to Monroe, Washington with J.E.L.R. for a

23  one week visit with Respondent Lavison's family.

24

25

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 5 of 17

**Law Office of F.Andrekita Silva**
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

3. 23.   Respondent Lavison continued to have episodes of depression. On three occasions in 2019, Respondent traveled to Monroe, Washington for one to two months at a time. While in Washington, Respondent Lavison picked up odd jobs doing landscaping. Respondent made an occasional modest contributions to their finances, but the couple continued to rely on Petitioner for the bulk of their financial needs.

3. 24.   On May 29, 2019, during one trip to Monroe, Respondent visited a doctor. He was prescribed escitalopram for depression and lorazepam for anxiety.

3. 25.   Although Petitioner Rivera worked very hard to salvage the relationship for the sake of J.E.L.R., Respondent Lavison remained verbally abusive, disrespectful of her, and unwilling to secure regular employment. Petitioner was concerned that J.E.L.R. not be raised in an emotionally unhealthy environment.

3. 26.   Late in December of 2019, Respondent Lavison traveled to Monroe. While he was there, Petitioner Rivera let him know that she wished to end their relationship. Respondent and J.E.L.R. had a close bond. Petitioner agreed that Respondent could spend time with J.E.L.R. or care for J.E.L.R. whenever he wished.

3. 27.   Respondent Lavison returned to San Luis in February of 2020. Other than being verbally abusive and disrespectful towards her in J.E.L.R.'s presence, Respondent had not been inappropriate with J.E.L.R.  He wanted to remain involved with J.E.L.R. and Petitioner Rivera valued his role as a father. She agreed that Respondent Lavison would continue to care for J.E.L.R. while she was at work.

3. 28.   After an argument less which was 6 days or less after arriving in San Luis, Respondent again left San Luis and returned to Monroe.

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 6 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

3. 29. Petitioner Rivera, again, made it clear that Respondent Lavison could communicate with J.E.L.R. anytime he wished. However, she did not hear from Respondent Lavison until March 26, 2020 when he sent a WhatsApp message asking about J.E.L.R.

3. 30. In early July 2020, he communicated that he and Brenda Lavison, the paternal grandmother, were coming to San Luis to visit J.E.L.R. for his birthday. They arrived shortly after and while in San Luis, they stayed at Petitioner's home on Avenida Puebla. Petitioner stayed with her parents. Petitioner gave Respondent and paternal grandmother complete access to J.E.L.R. They remained approximately 5 days and then returned to Washington.

3. 31. In July of 2020, Respondent sent Petitioner money for J.E.L.R.'s support on three occasions. He sent $490.00 USD on July 4, 2020, $60.00 U.S.D. on July 13, 2020, and $50.00 U.S.D. on July 26, 2020.

3. 32. Respondent and Petitioner remained in contact through WhatsApp messages and Facebook messenger.

3. 33. On August 31, 2020, Respondent Lavison returned to San Luis and remained there until early December 2020. During those 3 months, so that J.E.L.R. could experience a family, Petitioner Rivera and J.E.L.R. shared Petitioner's home on Avenida Puebla with Respondent. During that time, Respondent contributed modestly to groceries for the family and supplies for J.E.L.R. However, he did not contribute to the cost of housing, utilities, or other living expenses.

3. 34. In early December 2020, Respondent Lavison returned to Washington. At the end of the month, he returned to San Luis a few days before December 31, 2020 to spend the New Year with Petitioner and J.E.L.R. During this trip, Respondent Lavison remained in San Luis until February 1, 2021. He again stayed with Petitioner and J.E.L.R. in Petitioner's home on Avenida Puebla. He contributed to groceries for the family and supplies for J.E.L.R. However, he did not contribute to the cost of housing or utilities.

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington 98101
206-224-8288

1/4/2022

3. 35.   After Respondent Lavison returned to Washington, he again remained in contact by WhatsApp messages and facebook messenger. On March 10, 2021, he sent $100.00 U.S.D. and on May 16, 2021, he sent $350.00 U.S.D. for J.E.L.R.'s support.

3. 36.   In early July 2021, he sent a text message letting Petitioner know that he and paternal grandmother, Brenda, were traveling to Mexico to visit J.E.L.R. for his 3rd birthday.

3. 37.   Upon their arrival, Petitioner offered Respondent Lavison and paternal grandmother, Brenda, lodging at her home on Avenida Puebla. To give them privacy, she went to stay with her parents, Maria Guadalupe Gabriel and Manuel de Jesus Rivera, on Avenida Mexico. So that Respondent and his Mom could enjoy J.E.L.R. as much as possible during their visit, she left J.E.L.R. in their care while she was working. They arrived on July 6, 2021 and remained three days. Each morning, Petitioner checked in to see how they were doing.  Petitioner Rivera also visited with J.E.L.R. after the end of her work day.

3. 38.   Respondent Lavison and paternal grandmother, Brenda, attended festivities at the home of maternal grandparents, Guadalupe and Manuel, on the evening of July 8. While Petitioner was cleaning up, Respondent and paternal grandmother, Brenda, left abruptly with J.E.L.R. without giving Petitioner a chance to say goodnight.

3. 39.   The following morning, July 9, 2021, Petitioner Rivera called to check in and see how they were doing.  Respondent didn't answer the messages thru WhatsApp. At approximately noon, Respondent sent a message that they had gone to Yuma for shopping. He sent her a photo of J.E.L.R. in his car seat.  Despite additional efforts to touch base with them during the day, Respondent Lavison did not respond to any other calls or messages by Petitioner.

3. 40.   At 6:00 p.m., Respondent Lavison sent Petitioner Rivera a message advising that he, paternal grandmother, Brenda, and the child were not returning.

3. 41.   Petitioner Rivera drove to her home on Avenida Puebla. She confirmed that Respondent's luggage was no longer there and that all of J.E.L.R.'s belongings were gone.

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 8 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

1    3. 42.   Petitioner Rivera sent messages voicing her objection and insisting that Respondent

2    return J.E.L.R. Respondent Lavison refused and indicated he only wanted a two week vacation

3    with J.E.L.R. in Washington.

4    3. 43.   Petitioner Rivera was not in a position to cross the border to retrieve her son. In an

5    effort to resolve the situation amicably, Petitioner Rivera agreed that J.E.L.R. could remain with

6    his father for two weeks only. At the conclusion of the two weeks, Respondent Lavison refused

7    to arrange for the return of J.E.L.R. and said that he wanted more time.

8    3. 44.   Petitioner Rivera, again, was not in a position to go retrieve J.E.L.R. from

9    Washington. She agreed to one more week.

10   3. 45.   On July 30, 2021, when Respondent Lavison refused to return J.E.L.R., Petitioner

11   filed a criminal complaint for Respondent's abduction of J.E.L.R. with law enforcement in San

12   Luis Rio Colorado,

13   3. 46.   After that, although Respondent Lavison sent messages and photos to Petitioner

14   letting her know how J.E.L.R. was doing, he refused to accept calls from Petitioner Rivera

15   through his cell phone, through WhatsApp or Messenger.

16   3. 47.   Petitioner Rivera persisted in her efforts to communicate with Respondent Lavison in

17   order to secure J.E.L.R.

18   3. 48.   In September of 2021, Petitioner and Respondent discussed J.E.L.R.'s return to

19   Mexico. Respondent Lavison advised Petitioner Rivera that if she wanted J.E.L.R., she would

20   have to travel to Washington to retrieve him. He insisted that after his July trip to San Luis, he

21   had no money for travel costs.

22   3. 49.   Petitioner Rivera understood that Respondent Lavison was unemployed and perhaps

23   could not afford J.E.L.R.'s travel to Mexico.

24

25

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

1    3. 50.   Petitioner secured a flight to Washington. On September 19, 2021, she received a

2    WhatsApp message from Respondent indicating that he and J.E.L.R. were awaiting her arrival

3    on September 20, 2021.

4    3. 51.   On September 20, Petitioner Rivera flew to Seattle from Mexicali. She was met by

5    her cousin, Jose Martinez, and her uncle, Margarito Villapudua who had traveled from Arizona to

6    provide emotional support.  As agreed with Respondent, on September 21 at approximately

7    noon, Petitioner appeared at Respondent's home located at 351 Polk Lane, Apt. C, Monroe.

8    3. 52.   Upon arrival, the paternal grandfather, Stephen Lavison, greeted her. He advised her

9    that Respondent had been left home with J.E.L.R. 2 days prior. He told her he had no

10   information on his whereabouts. The maternal grandmother, Brenda, was contacted by phone by

11   Stephen Lavison and she provided this same information.

12   3. 53.   Petitioner continued to try to reach Respondent by phone.  As there was still no word

13   from Respondent, later that day, Petitioner filed a report with law enforcement for the City of

14   Monroe.

15   3. 54.    On September 21, 2021, Respondent sent Petitioner a message indicating that he

16   would have no further contact with her due to her recent escalation of the situation.

17   3. 55.   Although Petitioner sent messages begging to see her child, Respondent did not

18   respond until September 23, 2021. At that time, he sent her a message indicating that the child

19   should not reside in Mexico.

20   3. 56.   Petitioner and Respondent were unable to resolve the situation through messages.

21   3. 57.   On Friday, September 24, 2021 and September 25, 2021, a Detective Larson

22   contacted Petitioner and indicated that he had made contact with the Respondent and that the

23   child was fine. He advised that further assistance was not available as this was a civil matter.

24   3. 58.    Respondent Lavison sent other photos to Petitioner but refused to engage in

25   dialogue of any sort with Petitioner Rivera until September 29, 2021. At that time, he maintained

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 10 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington 98101
206-224-8288

1/4/2022

1   his position that the child should not return to Mexico. As an alternative, he asked Petitioner

2   Rivera to remain in the U.S. He promised to assist Petitioner Rivera in securing residency. He

3   also promised to assist financially so that Petitioner could remain at home and care for the child

4   as a housewife.  However, he did not give Petitioner access to see their child.

5       3. 59.   On September 30, 2021, the parties resumed communications. Respondent Lavison

6   initially agreed to permit access between Petitioner and the child. However, visitation access

7   never occur.

8       3. 60.   Petitioner Rivera was unable to remain in Washington any longer.

9       3. 61.   On October 1, 2021, Petitioner arranged a return flight to Mexico. She continued her

10  efforts to see her son, J.E.L.R., before departing. Although Respondent indicated a willingness

11  to provide access, including a willingness to meet at the airport, he did not follow through.

12  Petitioner returned to Mexico without having any contact with J.E.L.R.

13      3. 62.   On October 13, 2021, Petitioner filed a Petition for Custody in the Family Court

14  located in San Luis Rio Colorado, Sonora in case # 621/2021.

15      3. 63.   Since returning to Mexico, Respondent Lavison sends pictures and messages to

16  Petitioner via WhatsApp.  However, he permits only one video chat per week between Petitioner

17  and the child, J.E.L.R.

18      3. 64.   From his birth and until July 9, 2021, J.E.L.R. resided in his mother, Petitioner

19  Rivera's primary care. She was his primary source of financial and emotional support for J.E.L.R.

20  Respondent Lavison traveled between Mexico and Washington as he saw fit, without

21  consultation with Petitioner. As Respondent was marginally and sporadically employed, he made

22  only modest contributions to J.E.L.R.'s food and clothing while living with him in Mexico. Apart

23  from the modest and sporadic funds sent while in the U.S., Petitioner was solely financially

24  responsible for J.E.L.R.'s needs.

25

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

1   3. 65.   When Respondent Lavison was in San Luis, he provided the work-related child care.

2   During the months or weeks when Respondent was gone, maternal grandmother, Ma.

3   Guadalupe, took over the work-related child care responsibilities.

4   3. 66.   Mexico is the habitual residence of the child. Prior to Respondent's wrongful removal

5   of J.E.L.R. on July 9, 2021, the child had never resided outside of Mexico.

6   3. 67.   Prior to July 9, 2021, the date of Respondent's wrongful removal of J.E.L.R., he

7   resided in the sole custody of Petitioner.

8   3. 68.   The child has been wrongfully retained by Respondent in the United States since

9   arriving in Washington.

10

11          IV. WRONGFUL REMOVAL OF CHILD AND RETENTION: CLAIM FOR RELIEF

12   4. 1.   As set forth above, Mexico is the habitual residence of the children, as prior to July 9,

13   2021, Mexico was J.E.L.R.'s exclusive home since his birth.

14   4. 2.   As set forth above, the Respondent father wrongfully removed J.E.L.R. from his

15   habitual residence of Mexico on July 9, 2021.

16   4. 3.   Petitioner Rivera did not consent to nor acquiesce in the removal of the child from his

17   habitual residence.

18   4. 4.   The Petitioner did not consent to nor acquiesce in the retention of the child from his

19   habitual residence.  Despite Petitioner's efforts to secure Respondent's cooperation in returning

20   the child to Mexico, Respondent has wrongfully retained the child in the State of Washington,

21   United States.

22   4. 5.   Such removal and retention of the Children is wrongful within the meaning of Article 3

23   of the Hague Convention because:

24      (a)      It is a violation of Petitioner's rights of custody as established by the Family Code
                 for the State of Sonora, Volume I, Title I, Chapter IV., Marriage Rights and
25               Obligations, Articles 25-32; Chapter VI. Divorce by Fault, Articles 155- 157;
                 Chapter VII. Damage and Personal Consequences of Divorce, Articles 167-182;

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 12 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

Chapter VIII.,Children Custody Assignment in Divorce, Articles 183-190; Title IV,
Parental Authority, Chapter I, General Dispositions, Articles 308-320; Chapter III,
Termination Loss and Suspension of Parental Authority, Articles 336-340;
Chapter IV, Recovery of the Country Potestad, Articles 341-345.

(b)     At the time of the Children's removal from Mexico, Petitioner was actually
exercising her rights of custody within the meaning of Articles 3.15.1 through
3.20 and 5 of the Hague Convention and, but for Respondent's removal and
retention of the children, Petitioner would have continued to exercise those
rights; and

(c)     The Children were habitually resident with Petitioner in Mexico within the
meaning of Article 3 of the Hague Convention immediately before their removal
and retention by Respondent.

4. 6.     Petitioner has a right of custody of the child at issue in this case within the
meaning of Articles 3 and 5 of the Hague Convention in that Petitioner had  she was exercising
those rights.

4. 7.     Upon information and belief, Respondent is residing with the child, J.E.L.R. at
351 Polk Lane Apt C., Monroe, Washington 98272.

4. 8.     The Hague Convention applies to children under sixteen (16) years of age. The
child is now age 3  and thus, the Hague Convention applies to , J.E.L.R.

4. 9.     This Petition is filed less than one year from Respondent's wrongful removal of
the child. As set forth above, Petitioner has never consented or acquiesced to Respondent's
wrongful removal or retention.

V.  PROVISIONAL REMEDIES

5. 1.     Pursuant to 42 U.S.C. § 9004(a) the court may take or cause to be taken
measures to protect the well-being of the child and to prevent a child's further removal or
concealment before the final disposition of the petition.

5. 2.     Petitioner is presently in Mexico. She is able to appear at any hearing via Zoom.
However, immediately upon entry of a date for evidentiary hearing, Petitioner will make
arrangements to enter into the United States so that she can attend a hearing in-person, if a
hearing is required (or permitted given the recent General Order 16-21 for the Western District of

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 13 of 17

Law Office of F.Andrekita Silva
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

1  Washington Seattle Court suspending in-person hearings), and/ or to receive the physical

2  custody of her child in order to return her child to Mexico.

3      5. 3.      Petitioner requests that pending further court hearing, that this Court issue:

4          a)      an immediate order restraining Respondent from removing the child from
                   Snohomish County and / or Western Washington and from the jurisdiction
5                  of this court;

6          b)      an Order to Show Cause requiring the Respondent to appear before the
                   court on an expedited basis and to show then and there why the court
7                  should not enter an order requiring the Respondent to immediately return
                   the child to his home of habitual residence in Mexico;

8

9      5. 4. Petitioner requests that the court further order an expedited hearing, to be held within 3

10  weeks, on the Petitioner's verified petition.

11

12                        VI.  ATTORNEY FEES AND COSTS
                            (42 U.S.C. § 9007 (b)(3))

13

14      6. 1.      To date, Petitioner has incurred attorneys' fees and costs as a result of the

15  wrongful removal and the wrongful retention of the Child by Respondent.  Petitioner has already

16  incurred travel costs in September of 2021 when she appeared in Washington in the hopes of

17  securing Respondent's voluntary agreement to return J.E.L.R to Mexico. She will incur additional

18  travel costs for herself from Mexico and return travel costs for herself and J.E.L.R. She will incur

19  other miscellaneous costs as well.

20      6. 2.      Petitioner respectfully requests that this court award her all costs and fees,

21  including costs for lodging, transportation and other miscellaneous costs, incurred to date and up

22  until the time of hearing as required by 42 U.S.C. § 9007 (b)(3), and in such amount to be proven

23  at the time of the hearing.

24

25      /

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL
CHILD ABDUCTION
Page 14 of 17

**Law Office of F.Andrekita Silva**
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288

1/4/2022

1
2                             VII.   NOTICE OF HEARING

3        7. 1.       Pursuant to 42 U.S.C. § 9003(c), Respondent shall be given notice of these

4  proceedings in accordance with the laws governing notice in interstate child custody

5  proceedings.

6
7                           VIII.  RELIEF REQUESTED

8  Petitioner requests that the court enter an order or orders which:

9       8.1 .      An immediate restraining order prohibiting the Respondent from removing the
10               child from Snohomish County, from Western Washington, and from the
jurisdiction of this court pending a hearing on Petitioner's Verified Petition for
Return of Children;

11
12      8.2 .      An immediate restraining order without prior notice to Respondent prohibiting any
person acting in concert with and/ or participating with the Respondent from
taking any action to remove the child from Snohomish County, Western
13              Washington, and from the jurisdiction of this court pending an expedited hearing
on Petitioner's Verified Petition for Return of Child;

14
15      8.3 .      An order requiring the Respondent to pay all expenses incurred by the Petitioner
in this matter, including airfare, hotel, food, and other travel expenses and
necessities incurred by Petitioner in this action;

16
17      8.4 .      An order requiring Respondent to pay all attorney's fees and costs incurred by the
Petitioner in securing the return of the children to their habitual residence;

18      8.5 .      An Order to Show Cause to be issued without prior notice to Respondent
requiring the Respondent to appear before the court on an expedited basis and to
19              show then and there why

20            1) the court should not enter an order finding

21                a. that the children's habitual residence is Sonora, Mexico;
                 b. that the Respondent wrongfully removed the child from Mexico;
22                c. that the Respondent has wrongfully retained the child in Washington;
                 d. that the Petitioner is the biological mother of the child with rights of custody
23                e. that the Petitioner was exercising her rights of custody prior to the
                   wrongful removal and retention by Respondent;
24                f.  that the court has jurisdiction of this action .

25            2) The Respondent should appear and show cause why

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE                **Law Office of F.Andrekita Silva**
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL          **1325 Fourth Avenue, Suite 2000**
CHILD ABDUCTION                                         **Seattle, Washington  98101**
Page 15 of 17                                               **206-224-8288**

1/4/2022

1    The court should not enter an order requiring that the child be immediately
2    returned to his habitual residence at Sonora, Mexico.

3    3) The Respondent should appear and show cause why all relief requested by the
     Petitioner should not be granted.
4

5    8.6 .    The court should order the hearing on the order to show cause to be scheduled

6    on an expedited basis within three weeks;

7
     8.7 .    The court should order any other further relief as justice may require.
8

9                              Dated : January 5, 2022

10   Dated this    4th    day of _____ January _____ , 2021.

11                                  andrekita silva
12                              Law Office of F. Andrekita Silva

13                              Ss// by  andrekita silva

14                              Andrekita Silva, WSBA No. 17314
                                Attorney for Petitioner
15                              Law Office of F. Andrekita Silva
                                1325 Fourth Avenue, Suite 2000
16                              Seattle, Washington 98101
                                Telephone: 206-224-8288
17                              ak@seattle-silvalaw.com

18

19

20

21

22

23

24

25

VERIFIED PETITION FOR RETURN OF CHILD UNDER THE                Law Office of F.Andrekita Silva
CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL               1325 Fourth Avenue, Suite 2000
CHILD ABDUCTION                                                Seattle, Washington  98101
Page 16 of 17                                                  206-224-8288

1/4/2022

IX.  VERIFICATION OF PETITION

I, Yesenia Rivera Gabriel, declare as follows:

    1.    I am the Petitioner in this action.  I have reviewed the Petition.

    2.    The facts contained in it are true and accurate.  That said, Anthony traveled back and forth from San Luis Rio Colorado to Monroe, Washington many times from 2018 and 2021.  As he had no particular schedule, and as I had no reason to believe I needed to keep a calendar of when he came and went, the dates of his travel are to the best of my recollection.

    3.    Separately, I am submitting a copy of the Application Under the Hague Convention on the Civil Aspects of International Child Abduction which I submitted to the Mexican Central Authority and which was forwarded  to the U.S. Department of Justice. I am providing additional supporting material as well.

    4.    I am asking that the court grant all the relief requested in my Petition.

    5.    Apart from brief video chats Anthony permits me to have once a week, I have not seen our son since July 8, 2021.

    6.    I am asking that this case be heard on an expedited basis.

        I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at <u>San Luis Rio Colorado, Sonora</u> , on the <u>7th</u> day of <u>January</u>, 2022

_____

Yesenia Rivera Gabriel

**Law Office of F.Andrekita Silva**
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101
206-224-8288